IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| Mayslake Village - Plainfield Campus, Inc., an Illinois not-for-profit corporation, | Case No. 09-43338 |
| Debtor. | Honorable John H. Squires |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO USE PRE-PETITION
COLLATERAL, INCLUDING CASH COLLATERAL AND (II) GRANTING
ADEQUATE PROTECTION PURSUANT TO SECTIONS 361, 362 AND 363**

Upon the motion (the "Motion"), of Mayslake Village – Plainfield Campus, Inc. (the "Debtor"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code, for the entry of an final order authorizing the Debtor to use cash collateral of Bank of America, N.A. ("Lender") and providing adequate protection to Lender; the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and upon the record; and after due deliberation; and good and sufficient cause appearing, it is hereby:

FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction.*    This Court has core jurisdiction over this bankruptcy case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Prepetition Lender.*    The Debtor admits that pursuant to the Project Promissory Note and the Land Promissory Note, each dated August 4, 2005 (collectively, the "Prepetition Loan"), and, together with the other agreements, documents, and instruments delivered pursuant to or in connection with any thereof (the "Prepetition Loan Documents") between Mayslake

-1-

Village – Plainfield Campus, Inc. as borrower (the "Prepetition Borrower") and Bank of America, N.A., as successor by merger to LaSalle Bank National Association as lender ("Prepetition Lender"), the Prepetition Lender made loans and advances to, and/or provided other financial accommodations to the Prepetition Borrower.

3. *Prepetition Obligations.* The Prepetition Loan provided the Prepetition Borrower with, among other things, a loan commitment in the aggregate principal amount of $25,500,000 under the Project Promissory Note and $1,544,000 under the Land Promissory Note.

4. To secure the Prepetition Obligations, the Prepetiton Borrower granted the Prepetition Lender for the benefit of the Prepetition lender security interests and liens (the "Prepetition Liens") on substantially all the assets of the Debtor, as further identified in the Construction Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated August 4, 2005 and recorded on August 30, 2005 with the Recorder of Deeds in Will County, Illinois as Document Number R2005149065 and the Assignment of Rents and Leases, dated August 4, 2005 and recorded on August 30, 2005 with the Recorder of Deeds in Will County, Illinois as Document Number R2005149066 (the "Prepetition Collateral").

5. *Objections.* All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

6. *Use of Pre-petition Collateral.* Pursuant to sections 361, 362 and 363 of the Bankruptcy Code, the Debtor is hereby authorized to use Lender's cash collateral, including, but not limited to, that cash collateral relating to the rents collected at Cedarlake Village and any other collateral in which Lender has an interest to pay operating expenses of Cedarlake Village, as specifically described in the Budget attached hereto as Exhibit 1 (the "Budget"). The Debtor

71228-0001.0003/LEGAL17358193.1

is authorized to spend the amount set forth in the Budget (the "Budget Amount") and is not

limited to the month-to-month schedule set out in the Budget. If for any month the Debtor

desires to supplement the Budget to include a new category of expense or to increase spending

for an existing category of expense by more than 10%, the Debtor shall give notice by electronic

mail to Lender's counsel of record setting forth the proposed supplemental expenditure. The

Debtor may use the Lender's cash collateral for the proposed supplemental expenditure unless,

within five business days after the Debtor has given notice, the Lender has notified the Debtor's

counsel by electronic mail that it objects to the expenditure. In the event of such an objection,

the Debtor may move the Court to authorize the expenditure and in responding to such motion

the Lenders may assert that they are not adequately protected for the proposed expenditure.

7.     *Grant of Adequate Protection to Prepetition Lender.*

a.  *Grant of Replacement Liens.*  As adequate protection in accordance with

section 363(e) of the Bankruptcy Code, the Prepetition Lender is hereby granted valid, binding,

enforceable and perfected Replacement Liens in all post-petition collateral in which the

Prepetition Lender would have held a lien but for the filing of the chapter 11 Bankruptcy, as

listed in the Construction Mortgage, Security Agreement, Assignment of Leases and Rents and

Fixture Filing and the Assignment of Rents and Lease (the "Replacement Collateral"), provided

that no Replacement Lien shall extend to any avoidance claims or recoveries under Chapter 5 of

the Bankruptcy Code. The Replacement Liens are deemed perfected effective as of the Petition

Date, and no further notice, filing or other act shall be required to effect such perfection;

provided, however, if the Prepetition Lender shall, in its sole discretion, choose to file such

mortgages, financing statements, notices of liens and security interest and other similar

documents, all such mortgages, financing statements or similar instruments shall be deemed to

-3-

have been filed or recorded as of the Petition Date. The automatic stay under Section 362 of the Bankruptcy Code is hereby modified to the extent necessary to allow the Prepetition Lender to file or record any such mortgages, financing statements, notices of liens and security interests and other similar documents.

b. *Priority of Replacement Liens*. The Replacement Liens shall be subject only to (i) any valid, binding, enforceable and perfected Liens (other than the Prepetition Liens), if any, existing in any Replacement Collateral immediately prior to the Petition Date, which are otherwise senior to the Prepetition Liens in such collateral. Except as expressly set forth in this Order, the Replacement Liens shall not be subordinated or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. The Replacement Collateral and Replacement Liens shall not be subject to any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assess by, through on or behalf of the Debtor).

8.    *Increases in the Budget Amount due to increased occupancy*. If during the Budget Period, Cedarlake Village increases its occupancy, the Debtor, after consultation with the Lender, is authorized to increase the Expenses set forth in the Budget to reflect the increased costs of additional occupancy. The Debtor is similarly authorized to increase the total Budget Amount to reflect the increased Expenses, after consultation with the Lender. Nevertheless, the cumulative increase to any single Expense and/or the Budget Amount shall not exceed 10% during the Budget Period.

9.    *Permitted Uses and Variances*. The Debtor may only use Lender's cash collateral for the Expenses set forth in the Budget and, with the Lender's approval, for any additional

-4-

expense incurred in the ordinary course of business. The Debtor shall not use Lender's cash collateral for any purpose outside the ordinary course of business and which does not conform to the Budget. Given the variability of certain Expenses, including utilities and food prices, the Debtor is authorized to increase or diminish any budgeted Expense by up to 5% during the Budget Period. Except as stated herein, there shall be material compliance with the Budget.

10. *Lender's Inspection.* Lender shall have the right, during normal business hours Monday through Friday and upon reasonable written notice to the Debtor's counsel, to inspect the facilities at Cedarlake Village, as well as the Debtor's books and records. The Debtor shall cooperate with, consult with and provide to Lender all such non-privileged information as Lender may reasonably request.

11. *Further Assurances.* The Debtor shall execute and deliver to the Prepetition Lender all such agreements, financing statements, instruments and other documents as the Lender may reasonably request to evidence, confirm, validate or perfect the Replacement Liens.

12. *Financial Reports.* The Debtor shall furnish to Lender (i) on or before the time specified therefore in the Prepetition Loan Documents, all financial statements, information, reports, notices and other financial analyses required to be delivered by the Prepetition Loan Documents, (ii) within thirty (30) days after the end of each calendar month, a balance sheet, income statement, cashflow statement, and rental vacancy and leasing activity report for such month (iii) by the tenth business day in each month, a reconciliation of actual expenditures and disbursements to budgeted amounts for the prior month; and (iv) such other financial statements, information and reports as the Lender shall reasonably request concerning the Debtor's business operations and financial condition.

-5-

13.    *Insurance.*  The Debtor shall insure Cedarlake Village, and upon Lender's written request, shall provide proof of such insurance to Lender.

14.    *Termination of Use of Cash Collateral.*  Notwithstanding anything to the contrary contained herein, the Debtor's right to use the Cash Collateral shall expire on the earliest to occur of (the first such occurrence being hereinafter referred to as the "Termination Event"): (a) a finding by this Court or by any other court having jurisdiction over this chapter 11 case of non-compliance by the Debtor with any of the material terms or provisions of this Order; (b) the entry by this Court of an order vacating the terms of this Cash Collateral order; (c) the dismissal or conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; and (d) the occurrence of the effective date or consummation of a plan of reorganization. On and after the Termination Event, the Debtor shall immediately cease using any of the Cash Collateral; provided however, that the Debtor reserves the right to seek Court authorization to continue to use such Cash Collateral, and Lender reserves the right to oppose such relief.

15.    *Budget.*  The Budget is hereby approved, including the allowed variances set out in this Order. The Debtor and Lender may mutually agree to amend the Budget at any time without further Court order.

16.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution.

17.    *Notice.*  On or before five (5) business days following the entry of this Order, the Debtor shall serve a copy of this Order by first-class mail upon: (a) the United States Trustee; (b) Lender's counsel; (c) the Debtor's twenty (20) largest unsecured creditors; and (d) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 prior to the

-6-

date of service of the Cash Collateral Order.

18.　*Binding Effect and Reservation of Rights*.　This Order shall be binding upon and inure to the benefit of Lender and the Debtor, *nunc pro tunc*, as of the Petition Date.　This Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair, the rights of Lender to receive any pre-petition or post-petition payments due Lender or to seek modification of the terms hereof at any time upon reasonable notice to all parties in interest.　This Order shall in no way prejudice, and does not constitute a waiver of, expressly or implicitly or otherwise impair, Lender's rights, including, but not limited to, Lender's right to at any time seek relief from the automatic stay on any legal or equitable grounds (including the absence of adequate protection) and, in the event of any default by the Debtor pursuant to this Order, to seek an order prohibiting the Debtor from using the rents or vacating, modifying or terminating this Order.

19.　*Survival*.　If any or all of the provisions of this Order are hereafter modified, vacated, amended or stayed by subsequent order of this Court or any other Court, such modification, vacatur, amendment of stay shall not affect the validity or enforceability of any security interest, liens, transfers, or priority authorized or created hereby prior to the effective date of such modification, stay, vacation, or order. The validity and enforceability of all security interest, liens, transfers, and priorities authorized or created hereby shall survived the conversion of the Debtor's case to one administered under chapter 7 of the Bankruptcy Code or the dismissal of such case, if any.　To the extent permitted by applicable law, if any order dismissing the chapter 11 case under 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that the Replacement Liens and other protections afforded or granted to the Prepetition Lender pursuant

-7-

to this Order as of the date of such dismissal shall continue in full force and effect and shall

maintain their priorities as provided in this Order until all obligations in respect thereof shall

have been paid and satisfied in full (and that such Replacement Liens, and other protections

shall, notwithstanding such dismissal, remain binding on all parties in interest). Notwithstanding

a reversal, stay, modification or vacation of this Order, any use of Cash Collateral prior to such

reversal, stay, modification or vacation shall be governed in all respects by the original

provisions of this Order, and the Prepetition Lender shall be entitled to all the rights, remedies,

privileges and benefits granted herein with respect to such use. The Replacment Liens shall not

be discharged by the entry of an order confirming a chapter 11 plan in the Debtor's chapter 11

case.

Dated: _____

_____
United States Bankruptcy Judge

Prepared by:
Daniel A. Zazove, ARDC No. 3104117
Kathleen A. Stetsko
KStetsko@perkinscoie.com
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
312.324.8400

# EXHIBIT A

71228-0001.0003/LEGAL17358193.1

**Cedarlake Village**
**1/1/10 - 12/31/10 Budget**

| | Budget Jan-10 | Actual Feb-10 | Actual Mar-10 | Actual Apr-10 | Actual May-10 | Actual Jun-10 | Actual Jul-10 | Actual Aug-10 | Actual Sep-10 | Actual Oct-10 | Actual Nov-10 | Actual Dec-10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual Deposits | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 9 |
| Actual Mov-Ins | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 9 |
| Total Apartments Rented | 74 | 74 | 75 | 76 | 77 | 78 | 79 | 80 | 81 | 82 | 83 | 83 | 83 |
| | | | | | | | | | | | | | |
| Average Rent | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 | $1,675 |
| Rental Income | $123,950 | $123,950 | $125,625 | $127,300 | $128,975 | $130,650 | $132,325 | $134,000 | $135,675 | $137,350 | $139,025 | $139,025 | $1,577,850 |
| Other Income | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $2,400 |
| Total Income | $124,150 | $124,150 | $125,825 | $127,500 | $129,175 | $130,850 | $132,525 | $134,200 | $135,875 | $137,550 | $139,225 | $139,225 | $1,580,250 |
| | | | | | | | | | | | | | |
| **Expenses:** | | | | | | | | | | | | | |
| 62040 - Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| 62200 - Advertising/Marketing | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 192,000 |
| 62100.1 - Advertising/Marketing - Rent Incentives | 1,675 | 1,675 | 3,350 | 3,350 | 3,350 | 3,350 | 3,350 | 3,350 | 3,350 | 3,350 | 3,350 | 1,675 | 35,175 |
| 63100 - Office Salaries | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| 63110 - Office Expenses | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 4,717 | 56,604 |
| 63400 - Legal Expenses | - | - | - | - | - | - | - | - | - | - | - | - | |
| 63500 - Auditing Expenses | - | - | - | - | - | - | - | 7,000 | 1,800 | | | | 8,800 |
| 63510 - Bookkeeping/ Acctg Service | 1,260 | 1,260 | 1,260 | 1,260 | 1,260 | 1,575 | 1,575 | 1,575 | 1,260 | 1,260 | 1,260 | 1,260 | 16,065 |
| 64500 - Electricity | 9,348 | 9,348 | 9,475 | 9,601 | 9,727 | 9,854 | 9,980 | 10,106 | 10,233 | 10,359 | 10,485 | 10,485 | 119,000 |
| 64510 - Water | 5,241 | 5,241 | 5,312 | 5,383 | 5,454 | 5,525 | 5,596 | 5,666 | 5,737 | 5,808 | 5,879 | 5,879 | 66,721 |
| 64520 - Gas | 2,748 | 2,748 | 2,786 | 2,823 | 2,860 | 2,897 | 2,934 | 2,971 | 3,008 | 3,045 | 3,083 | 3,083 | 34,986 |
| 64540 - Licenses & Permits | | | | | | | 30 | | | | 300 | | 330 |
| 65150 - Supplies (Repair & Maint) | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 6,600 |
| 65175 - Repair & Maintenance | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 132,000 |
| 65176 - Outside Cleaning Service | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| 65250 - Garbage & Trash Removal | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 170 | 2,040 |
| 65300 - Security Contract | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 8,509 | 102,108 |
| 67200 - Property & Liab. Ins | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,300 | 6,300 | 6,300 | 6,300 | 6,300 | 73,800 |
| 67200 Interest Expense | 6,135 | 6,982 | 5,924 | 6,347 | 6,558 | 6,558 | 6,558 | 6,135 | 7,193 | 6,135 | 6,770 | 6,347 | 77,642 |
| 69200 - Wellness Center & Social Serv | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 69700 Activities Salaries | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| 69750 - Misc Activities Expenses | | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 3,850 |
| 69910 - Food Service Costs | 4,810 | 4,810 | 4,875 | 4,940 | 5,005 | 5,070 | 5,135 | 5,200 | 5,265 | 5,330 | 5,395 | 5,395 | 61,230 |
| 69915 - Food Service Salaries | 2,156 | 2,156 | 2,185 | 2,214 | 2,243 | 2,272 | 2,301 | 2,330 | 2,360 | 2,389 | 2,418 | 2,418 | 27,440 |
| 69915 - Bank Service Charges | - | - | - | - | - | - | - | - | - | - | - | - | |
| 69925 Transportation Expense | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 925 | 11,100 |
| **Total Expense** | 85,595 | 86,791 | 87,737 | 88,488 | 89,028 | 89,672 | 90,330 | 97,206 | 93,077 | 90,547 | 91,811 | 89,412 | 1,079,694 |
| | | | | | | | | | | | | | |
| **Net Income:** | $ 38,555 | $ 37,359 | $ 38,088 | $ 39,012 | $ 40,147 | $ 41,178 | $ 42,195 | $ 36,994 | $ 42,798 | $ 47,003 | $ 47,414 | $ 49,813 | $ 500,556 |

Note: Does not include interest
Expense paid or accrued on BOA Loans.